Bruno J Bembi
Attorney at Law
P.O. Box 5248
Hempstead, NY 11551
(516) 483 -7372
Brunobembi4@gmail.com

June 30, 2026

The Hon. Judge Polk Failla
United States District Court
For the Southern District of New York
United States Thurgood Marshall Courthouse
40 Foley Square
New York NY 10007

MEMO ENDORSED

Re: Quijada v Mullin et al 26-cv-4635-KPF

Dear Hon. Judge Polk Failla:

Immigration and Nationality Act [INA] section 244, 8 U.S.C. 1254a, is the statutory basis for Temporary Protected Status [TPS]. INA 244(d)(4), 8 U.S.C. 1254a(d)(4) states:

> Detention of the alien
>
> An alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States.

Immigration and Nationality Act [INA] section 244, 8 U.S.C. 1254a, is the statutory basis for Temporary Protected Status [TPS]. INA 244(f), 8 U.S.C. 1254a(f) states:

> During the period in which an alien is granted temporary protected status under this section -- --
>
> . . .

> (4) for purposes of adjustment of status under section 245 [8 U.S.C.A. section 1255] and change of status under section 248 [8 U.S.C.A. section 1258], the alien shall be considered as being in, and maintaining, lawful status as an immigrant.

However, this section does not allow a TPS recipient who entered the United States unlawfully to adjust his status to that of a lawful permanent resident [LPR] in the United States following an interview with an immigration officer in the United States unless he or she first obtains a lawful entry into the United States, such as through an admission with advance parole under 8 U.S.C. section 212(d). Sanchez v Mayorkas, 593 U.S. 409 (2021). Instead, such an individual would have to schedule an a U.S. Consulate in his or her home country to obtain such interview.

Losing TPS status

Losing TPS status appears to be covered by INA section 244(c)(3), 8 U.S.C. 1254a(c)(3), which provides, in pertinent part:

> Withdrawal of temporary protected status
>
> The Attorney General shall withdraw temporary protected status granted to an alien under this section if-- --
>
> (A) The Attorney General finds that the alien was not in fact eligible for such status under this section. . . .

INA section 244(c)(3)(B), 8 U.S.C. 1254a(c)(3)(B) allows for withdrawal of an individual's TPS status where such individual has not remained continuously present in the United States after obtaining TPS status, with certain exceptions. This subsection does not render Mr. Quijada ineligible for TPS.

INA section 244(c)(3)(C), 8 U.S.C. 1254a(c)(3)(C) allows for withdrawal of TPS status where the individual fails to reregister for TPS status as directed by the government. This subsection does not render Mr. Quijada ineligible for TPS.

Initial Eligibility for TPS status

Certain criminal grounds render an individual ineligible to initially obtain TPS status. INA section 244(c)(2), 8 U.S.C. 1254a(c)(2). Notably, INA section 244(c)(2)(B), 8 U.S.C. 1254a(c)(2)(B), renders an individual ineligible to receive

initial TPS status if he or she has been convicted of "any felony or 2 or more misdemeanors committed in the United States". The government has introduced no evidence of any convictions concerning Mr. Quijada. But even if it did, apparently all of the alleged arrests of Mr. Quijada occurred after he obtained TPS status, and therefore, any convictions resulting from such arrests would not cause him to lose his already granted TPS status. Withdrawal of TPS is covered under INA section 244(c)(3), 8 U.S.C. 1254a(c)(3), which notably does not provide for loss of TPS status for arrests of any kind nor for convictions of any kind.

Certain criminal grounds render an individual initially ineligible to receive TPS status without the requirement of a conviction. INA section 244(c)(2)(A), 8 U.S.C. 1254a(c)(2)(A) provides for the waiver of certain grounds of inadmissibility, except for certain criminal acts which are referred to in INA section 244(c)(2)(A)(iii), 8 U.S.C. 1254a(c)(2)(A)(iii), which refers to INA section 212(a)(2), 8 U.S.C. section 1182(a)(2). This latter subsection makes foreigners inadmissible to the United States if they have committed certain criminal acts, and a conviction is unnecessary to make them inadmissible. It may well be that the acts that the Government alleges Mr. Quijada to have committed render him inadmissible to the United States and if such acts were committed before a grant of TPS, such acts would have rendered the TPS applicant ineligible to obtain TPS status. However, the allegations appear to be that Mr. Quijada committed such acts after obtaining TPS status and, even if such allegations are true, they are insufficient to support a withdrawal of such status.

The Government indicates that Mr. Quijada obtained TPS status sometime in 2001, in paragraph 10, of document 7, in its declaration from Officer Kerryn Irving. The Government has submitted a document from the State of Maryland alleging that Mr. Quijada was arrested in 2009 for multiple counts. Notably, these alleged acts occurred after Mr. Quijada had been granted TPS status.

<u>The Withdrawal of Mr. Quijada's TPS status</u>

Mr. Quijada was arrested by ICE ERO on May 21, 2026, according to paragraph 20, of document 7, in the declaration of Officer Kerryn Irving. Mr. Quijada's TPS status was not withdrawn until June 3, 2026, as is evident from a document submitted to the Court on June 5, 2026, as Document 6-10. Therefore, Mr. Quijada had TPS status when he was arrested by ICE. Therefore, his arrest was unlawful under INA 244(d)(4), 8 U.S.C. 1254a(d)(4), which prohibits TPS recipients from being detained by ICE.

Additionally, the reasons given for the withdrawal of Mr. Quijada's TPS status are contrary to the provisions of the law. The June 3, 2026 decision lists a number of arrests which are alleged to have occurred after Mr. Quijada obtained TPS status. These may have been an impediment from him initially receiving TPS status, but they are claimed to have occurred after he obtained TPS status, and therefore do not provide a basis for terminating his TPS status, which, in any case, was not terminated until after he was detained by ICE. The June 3, 2026 gives Mr. Quijada 33 days in which to file an administrative appeal. This appeal will be sent out soon. TPS appeals can last a considerable period of time, such as 1 year, or longer. Mr. Quijada is likely to prevail in his administrative appeal.

Although the Government's response indicates that Mr. Quijada has certain convictions, the TPS revocation notice of June 3, 2026 does not mention any convictions, and the RAP sheets submitted to the Court do not indicate any convictions. Some entries indicate "completed" but what that may mean is unknown. Also, RAP sheets are unreliable and our position is that the Government would need to show actual court dispositions to support its charge that Mr. Quijada has convictions, or that the alleged arrests pertain to him.

<u>New York 287(g) Status has been terminated.</u>

Recently, New York State passed legislation to prohibit state and local governments from maintaining 287(g) programs with federal immigration authorities. Mr. Quijada's continued detention at the Orange County Jail is unlawful for this reason as well.

WHEREFORE, it is respectfully requested that Mr. Quijada be released from ICE custody as soon as possible.

Respectfully submitted,

Bruno J Bembi
Attorney for Mr. Quijada
(516) 483 -7372

cc: Counsel of Record (by ECF)

The Court thanks the parties for their supplemental submissions (Dkt. #11-12), which were requested after oral argument was held on June 16, 2026. After reviewing all the materials in this case, the Court GRANTS the petition.

In 1999, a final order of removal was issued against Petitioner. (Dkt. #11). Despite that, in 2001, Petitioner received TPS. (*Id.*). Petitioner then was convicted of multiple misdemeanors, and arrested and charged with numerous other crimes between 2002 and 2019. (*Id.*). Then, on May 21, 2026, the Government detained Petitioner to effectuate his 1999 final order of removal. (*Id.*). At that time, however, Petitioner remained a TPS holder. Eventually, Petitioner's TPS was revoked, but not until June 3, 2026. (*Id.*).

As the Government concedes, TPS holders cannot be detained "on the basis of the[ir] ... immigration status." 8 U.S.C. § 1254a(d)(4). (*See* Dkt. #11). Yet, the Government argues that its detention of Petitioner was lawful because he is *no longer* a TPS holder. But the revocation of TPS only happened *after* Petitioner's detention. The fact that Petitioner's TPS status has now been revoked does not make his detention before the revocation any more lawful.

The question is thus whether the unlawfulness of the initial detention warrants Petitioner's release. In this case, it does. The Government points to precedent explaining that habeas petitioners are only granted release if their detention is substantively -- not merely procedurally -- improper. (Dkt. #11). *See United States ex rel. Ling Yee Suey* v. *Spar*, 149 F.2d 881, 883 (2d Cir. 1945); *United States ex rel. Bilokumsky* v. *Tod*, 263 U.S. 149,1 58 (1923); *A.P.A.* v. *Arteta*, No. 26 Civ. 3334 (AS), 2026 WL 1587452, at *3 (S.D.N.Y. June 3, 2026). Sure enough. But Petitioner's detention here *was* substantively improper. On May 21, 2026, the Government had no right to detain Petitioner based on his immigration status, and yet it did so. The detention was thus defective in its substance, not merely the process used to effectuate it. And this circuit has made clear that habeas review includes "evaluating the lawfulness of detention when it is first imposed." *Velsaco Lopez* v. *Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

Because Petitioner's May 21, 2026 detention was substantively unlawful, his petition is GRANTED. Of course, the Court takes no position on any future efforts by the Government to detain Petitioner. The Government is ORDERED to release Petitioner from custody in the Southern District of New York on or before **July 13, 2026**.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

Dated: July 10, 2026
New York, New York

SO ORDERED.

Katherine Polk Failla

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE